## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**ALEXANDER W. THEROUX,**  Case No. 1:19 CV 1675

    Plaintiff,

    v.  Magistrate Judge James R. Knepp II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.  MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Alexander Theroux ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny child's insurance benefits ("CIB"), supplemental security income ("SSI"), and disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). For the reasons stated below, the Court affirms the decision of the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff first filed for DIB and SSI in December 2014, alleging disability as of September 30, 2013. (Tr. 217-20). Those claims were denied initially (Tr. 142-44), and Plaintiff did not appeal further. He then filed for CIB, DIB, SSI in January 2016, alleging a disability onset date of April 20, 1994. (Tr. 221-35). His claims were denied initially and upon reconsideration. (Tr. 145-53, 157-64). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before an administrative law judge ("ALJ") on April 10, 2018. (Tr. 31-59). On August 1, 2018,

the ALJ found Plaintiff not disabled in a written decision. (Tr. 15-24). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981, 416.1455, 416.1481. Plaintiff timely filed the instant action on July 23, 2019. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Born in 1992, Plaintiff was 25 years old at the time of the ALJ hearing. *See* Tr. 40. He lived with his parents, but also sometimes stayed with his girlfriend. (Tr. 46). Plaintiff originally alleged disability due to hypophosphatemic rickets, chronic kidney disease, high blood pressure, and hyperparathyroidism. (Tr. 274).

In a February 2016 function report, Plaintiff asserted he was unable to stand or walk for lengthy periods of time, unable to lift heavy objects, and had difficulty moving smaller objects due to his use of crutches. (Tr. 289). He had to sit to put on his pants, brush his teeth, or shower, and it was "[n]ext to impossible" to cook and "hard" to grocery shop. (Tr. 290). Plaintiff later stated he shopped in stores and by computer once or twice per week for one and a half to two hours. (Tr. 292). He stated he "[s]till can't walk after 2 years[] [and] need[ed] crutches". (Tr. 291). He was unable to drive ("[l]egs are too weak to press pedals") or ride a bike. (Tr. 292).

Plaintiff described previous leg surgeries, including subsequent complications (infections and blood clots). (Tr. 42-44). He testified that he used a wheelchair "mostly during recuperation and trying to do more physical therapy", and then transitioned to crutches. (Tr. 44). He stated that although he would "ideally [be] walking again . . . it seems to be [he] always seem[s] to hit a plateau where [he is] stuck on either one crutch or a cane and [he has] never really seemed to [have] gotten off one crutch or a cane since the surgery from 2014." *Id.* Plaintiff estimated that for

2

at least six months after each surgery, he could not have performed "a sit down job". (Tr. 50) (endorsing attorney's statement that he would "miss[] months of work a year going back to the last several years").

Plaintiff used an exercise bike and elliptical machine as part of physical therapy, for ten minutes or less at a time. *Id.* Sitting caused pain in his right femur. (Tr. 45).

At the April 2018 hearing, Plaintiff was working as an independent contractor selling life insurance, and trying to work 40 hours per week; he started this job in November 2017. *See* Tr. 40-41, 48. Plaintiff received a low average performance review because he was unable to sit through required phone sessions and unable to stay "in the field driving around to client's house[s]." (Tr. 46-47). Plaintiff described "do[ing] a lot of driving for [his] job" which caused right-sided sciatica pain. (Tr. 41); *see also* Tr 53-54.

Plaintiff relied on his girlfriend to help with things like laundry and groceries. (Tr. 41, 46). He had difficulty carrying groceries or laundry up or down stairs, but could do dishes because he could stand in one place and lean on the sink. (Tr. 46-47).

Plaintiff estimated he could stand in place for no more than half-an-hour at a time. (Tr. 46). He would have difficulty, however, if he had to do it repeatedly over multiple days. (Tr. 47).

Relevant Medical Evidence

Plaintiff had a correctional osteotomy on his left femur in 2006 (at the age of fourteen) for Vitamin D resistant rickets. (Tr. 346-47). In August 2009, he underwent a hardware removal surgery (Tr. 351-52) and bone graft (*see* Tr. 349). Plaintiff underwent further surgery in September 2011. *See* Tr. 353. In November 2011, Plaintiff transferred his care to Dr. Katherine Dell in Nephrology for his progressive renal disease related to his hypophosphatemic rickets. (Tr. 357).

In a September 2014 orthopedic follow up, Plaintiff was noted to have continued pain "mostly over his left midshaft tibia" and was "still ambulating with a single crutch." (Tr. 477).

In October 2014, Plaintiff saw Aiyappan Menon, M.D., for a slow-healing left tibia repair and evaluation of renal dysfunction. (Tr. 364-67). Two weeks later, Dr. Menon noted that Plaintiff's leg healing was "progressing, but very slowly"; he encouraged Plaintiff "to consider a little PT like exercise to accelerate the process." (Tr. 371). In the "Review of Systems" section of his notes, Dr. Menon stated Plaintiff had "no back pain and no difficulty walking." *Id.*

In January 2015, Raymond Liu, M.D., saw Plaintiff, noting he was "status post complex reconstruction of both lower extremities" and continued to have "a mild amount of left hip pain but mainly pain over the left anterior shin which prevent[ed] him from walking." (Tr. 391). He also observed Plaintiff had "malunion" and believed he would benefit from further surgery. (Tr. 393). Later that month, Dr. Liu performed a left hip excision of heterotopic ossification and left tibia/fibula extension osteotomy with an intramedullary nail. (Tr. 396). At a post-operative follow-up eight days later, Plaintiff's hip pain was resolved; he was "fairly comfortable", but "mostly painful over fibula." (Tr. 389). Plaintiff was transitioned to a walking boot, but instructed not to weight bear and to return in two and a half weeks. (Tr. 390).

In August 2015, Dr. Liu noted Plaintiff was "doing well at home", "slowly increasing his activity", and "using the elliptical machine at home". (Tr. 447). Plaintiff also reported camping with his friends, and "pulling his left hamstring while lifting a log about 2 ½ weeks ago on his camping trip." *Id.* Since that injury, he was "resting and using both crutches at home for about two weeks", but was "feel[ing] almost back to normal" and returned to using only one crutch. *Id.*

At the time he filed his second application in January 2016, a Social Security employee observed Plaintiff "had crutches with him and said he has had them since his last surgery in

4

Sept[ember] 2013." (Tr. 287) (capitalization altered). He further noted Plaintiff had difficulty sitting and standing. *Id.*

One week later, Plaintiff underwent another surgery for removal of the left tibial nail due to osteomyelitis. (Tr. 433-34). Post-surgery, Plaintiff developed a deep vein thrombosis. *See* Tr. 442. In February, Plaintiff had no pain in his leg and was using a walking boot and crutches. *Id.*

In March 2016, Plaintiff began physical therapy. *See* Tr. 577. He was "unable to weight bear fully". *Id.* Through that month, he remained limited in his ability to weight bear. *See* Tr. 572, 573. At the end of the month, Plaintiff stated he was using an elliptical machine, and that he "went for a 'hike' yesterday". (Tr. 570). During his subsequent physical therapy treatment, Plaintiff often had a crutch. *See* Tr. 537 (September 2016 – Plaintiff noted increased pain holding his crutch); Tr. 545 (July 2016 – Plaintiff reported right shoulder pain due to "crutch use"); Tr. 549 (June 2016 – "[g]ait training [with] crutch"); Tr. 562 (April 2016 – noting Plaintiff leaned right toward a crutch).

In August 2016, x-rays showed healing tibial and fibular osteotomies. (Tr. 488). Dr. Liu observed Plaintiff was "still walking with one crutch" (Tr. 634) and stated Plaintiff was "okay to continue to progressively weight-bear based on his symptoms" (Tr. 636). Plaintiff was to return in three months. (Tr. 636). At a visit with David Parris, M.D., that same month, Plaintiff reported pain in his left tibia as with his previous infection; he requested blood tests for MRSA. (Tr. 494). Dr. Parris also observed Plaintiff "was camping recently so his diet changed for several days." *Id.*

Plaintiff stopped physical therapy in November 2016 after 42 visits due to insurance issues. *See* Tr. 534.

February 2017 x-rays showed healed fractures of the left tibia and fibula. (Tr. 600). In March 2017, however, due to painful hardware, Plaintiff underwent a hardware removal and excision of left hip heterotopic ossification. (Tr. 604-07).

5

In July 2017, Dr. Liu observed Plaintiff "continue[d] to improve with time" and that although he had not attended therapy after his last visit, he worked on exercises on his own. (Tr. 649). Plaintiff was "only occasionally" using a crutch for support, and was bicycling again. *Id.*

In February 2018, Plaintiff returned to Dr. Liu reporting he was working "a desk job" but "still ha[d] some pain even with sitting." (Tr. 658). Dr. Liu noted further surgery was possible, but might be "particularly problematic on the left side where he previously had his infection." (Tr. 660). Dr. Liu recommended "a course of conservative management with strengthening with physical therapy" (Tr. 660), and, if unsuccessful, "then a clamshell brace may be helpful to try" (Tr. 661).

Plaintiff returned the following month, reporting "a lot of pain radiating down his right side"; it was mostly "over the lateral aspect of his thigh although he [did] have some pain radiating into his leg.". (Tr. 702). On examination, he had crepitus "over his lateral plate" and a positive straight leg raise test. (Tr. 704). Dr. Liu noted that x-rays "demonstrate[d] no change in his overall alignment or any concerns about his right femoral plate." *Id.* Dr. Liu diagnosed joint pain and right-side sciatica; he prescribed pain medication and ordered a lumbar spine MRI. *Id.* The MRI was negative and surgical removal of the right lateral femur plate was recommended. (Tr. 705).

There are multiple references to "Assistive Devices: Wheelchair" in the "Social History" section of Plaintiff's records. *See* Tr. 490, 495, 580 (Dr. Parris); Tr. 635, 650, 659, 703 (Dr. Liu).

*Opinion Evidence*

In February 2015, State agency physician Michael Delphia, M.D., reviewed Plaintiff's records and opined he could occasionally lift and carry twenty pounds, frequently lift and carry ten pounds, stand and/or walk for four hours in an eight-hour workday, and sit about six hours in an eight-hour workday. (Tr. 66-67).

6

In April 2016, State agency physician Gerald Klyop, M.D., opined that Plaintiff could occasionally lift or carry twenty pounds, and frequently lift or carry ten. (Tr. 79). He opined Plaintiff could sit about six hours in an eight-hour workday, but only stand/walk for a total of two hours; he further could not use foot controls with his left lower extremity. *Id.* Dr. Klyop also opined Plaintiff had some postural and environmental restrictions. (Tr. 80).

In November 2016, State agency physician Edmond Gardner, M.D., affirmed Dr. Klyop's opinion. (Tr. 115-17).

VE Testimony

A VE testified at the hearing before the ALJ. (Tr. 55-58). The ALJ asked the VE to consider a hypothetical individual with Plaintiff's age, education, work experience, and residual functional capacity ("RFC") as ultimately determined by the ALJ. *See* Tr. 56-57. The VE responded that such an individual could not perform Plaintiff's past work, but could perform other jobs such as document preparer, order clerk, or circuit board inspector. *Id.* The VE further testified that if the individual were off task 20 percent of the workday or were to miss an average of two months per year of work, no jobs would be available. (Tr. 57-58).

ALJ Decision

In his August 1, 2018 written decision, the ALJ found Plaintiff had not attained age 22 since, nor engaged in substantial gainful activity as of his alleged onset date (April 20, 1994). (Tr. 17). He found Plaintiff had severe impairments of: chronic kidney disease, left hip heterotopic ossification, left tibial malunion with procurvatum, and unequal leg length. (Tr. 18). However, the ALJ concluded that none of these impairments – individually or in combination – met or medically equaled the severity of a listed impairment. (Tr. 18). The ALJ concluded Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally use ramps and stairs, but can never use ladders, ropes, or

7

> scaffolds. [He] can occasionally balance, kneel, stoop, crouch, and crawl. He can never use foot controls bilaterally. He would need to use a cane for ambulation. He is restricted from hazards such as heights or machinery, but is able to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles.

(Tr. 19). The ALJ then found that considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 23). Therefore, the ALJ found Plaintiff not disabled. (Tr. 24).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff contends the ALJ: (1) failed to properly consider whether he satisfied the criteria of Listings 1.02 and 1.06 at Step Three; (2) failed to properly evaluate Plaintiff's credibility; and

(3) did not meet his burden at Step Five. *See* Docs. 13, 17. For the reasons discussed below, the Court finds no error and affirms.

Step Three

Plaintiff contends the ALJ erred in finding he did not meet Listings 1.02 and 1.06 Specifically, he argues the ALJ's determination that he could "ambulate effectively" is neither adequately explained nor supported by substantial evidence.

Plaintiff bears the burden at Step Three of establishing that his impairments meet or medically equal a listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987); *Bingaman v. Comm'r of Soc. Sec.*, 186 F. App'x 642, 645 (6th Cir. 2006); *see also Walters*, 127 F.3d at 529. The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). "A claimant must satisfy all of the criteria to meet the listing," *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009), and all of these criteria must be met concurrently for a period of at least twelve continuous months. *See* 20 C.F.R. §§ 404.1525(c)(3)-(4), 404.1509, 416.925(c)(3)-(4), 416.909; 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 1.00(D) ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

10

The Sixth Circuit has explained that at Step Three the ALJ must "actually evaluate the evidence, compare it to [the applicable] Listing, and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds*, 424 F. App'x at 416. However, the Sixth Circuit has also found remand not required based on an ALJ's cursory evaluation of (or failure to evaluate) a listing where a plaintiff had not shown he could satisfy the listing, or where the ALJ made sufficient supporting findings elsewhere. *See Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) ("[W]e decline Forrest's invitation to . . . to require remand when the ALJ provides minimal reasoning at step three of the five-step inquiry[.]"; *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006) (looking to findings elsewhere in ALJ's decision to affirm a Step Three determination; no need to require the ALJ to "spell out every fact a second time"); *cf. Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014) (*Reynolds* does not require remand unless claimant can "point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the [L]isting" and "[a]bsent such evidence, the ALJ does not commit reversible error by failing to evaluate a [L]isting at Step Three.") (internal citations omitted).

Plaintiff argues that the ALJ erred by failing to properly consider whether he satisfied the criteria of Listings 1.02 and 1.06. Specifically, he argues the ALJ's determination that "there was not evidence of an inability ambulate effectively for the durational requirement" (Tr. 18) is not supported by substantial evidence.

Listing 1.00B2b – incorporated by reference in both Listings 1.02 and 1.06 – describes the inability to ambulate effectively as "an extreme limitation of the ability to walk" and it "is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device[] that limits the functioning of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, Listing 1.00B2b(1); *see also* 20 C.F.R. Pt. 404,

11

Subpt. P, App'x 1, Listings 1.02A, 1.06B. By contrast, the Listings describe the ability to ambulate effectively as follows:

> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.* at Listing 1.00B2b(2).

At Step Three of his analysis, the ALJ explained:

> Listing 1.02 is not met because there is no evidence of involvement of one major peripheral weight-bearing joint, resulting in inability to ambulate effectively, as defined in 1.00B2b or involvement of one major peripheral joint in each upper extremity, resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2b.
>
> Listing 1.06 (fracture of the femur, tibia, pelvis, or one or more of the tarsal bones with: A. Solid union not evidence[d] on appropriate medically acceptable imaging and not clinically solid; and B. Inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur or is not expected to occur within 12 months of onset.
>
> The requirements of Listings 1.02 and 1.06 were not met because there was not evidence of an inability to ambulate effectively for the durational requirement. Although the claimant had multiple orthopedic surgeries on his legs, he returned to effective ambulation after the initial recovery period. By July 18, 2017, the claimant reported to Dr. Liu that his left leg continued to improve with time, and he only occasionally used a crutch for support (Ex. 1F/2). He resumed using a bicycle.

(Tr. 18).

Plaintiff argues this analysis is insufficient and fails to take into account that he "had surgery in both January 2015 and January 2016 and was still using a crutch in February 2017." (Doc. 13, at 11). He asserts that "[t]he ALJ, therefore, detailed evidence supporting that Theroux

12

was using a crutch for longer than the requisite twelve months." *Id.* The Court finds this argument unavailing because the use of a single crutch does not, alone, constitute ineffective ambulation. *See, e.g.*, *Brown v. Berryhill*, 2018 WL 3548843, at *18 (N.D. Ohio) (collecting cases).

Plaintiff further argues that "the listing does not require the use of two crutches, but rather that Theroux was unable to carry out routine ambulatory activities and/or walk a block at a reasonable pace on rough or uneven surfaces." (Doc. 13, at 11). This is accurate; however, it is Plaintiff's burden to establish disability at Step Three. *See Walters*, 127 F.3d at 529. And Plaintiff has cited no specific evidence – opinion or otherwise – to support this contention. Rather, Plaintiff describes the medical evidence regarding his surgeries and his testimony and seemingly asks the Court to infer from this evidence that he could not walk on rough or uneven surfaces or complete routine ambulatory activities. But it is not this Court's role in reviewing the ALJ's decision to make such inferences. Although Plaintiff contends there was "no evidence that [he] *could* ambulate effectively over rough or uneven surfaces" (Doc. 13, at 11) (emphasis added), to the contrary, it was Plaintiff's burden to show that he *could not* do so.

Further, the ALJ cited in his Step Three analysis Plaintiff's statement to Dr. Liu in July 2017 that he was only occasionally using a crutch for support. (Tr. 18) (citing Tr. 649). At that same visit, Plaintiff told Dr. Liu he had started bicycling again. *Id.* Additionally, elsewhere in his decision, the ALJ cited Dr. Liu's August 2015 notes that Plaintiff was using his elliptical machine at home and camping with his friends (Tr. 21) (citing Tr. 447); *see* Tr. 447 ("He has been using the elliptical machine more at home and recently went camping with his friends. He reports pulling his left hamstring while lifting a log about 2 ½ weeks ago on his camping trip."). He also cited Dr. Liu's August 2016 note that Plaintiff should continue increasing weight bearing "indicating improvement." (Tr. 21) (citing Tr. 636); *see* Tr. 636 ("okay to continue to progressively weight-

bear based on his symptoms"). These later factual findings support the ALJ's Step Three determination. *See Forrest*, 591 F. App'x at 366; *Bledsoe*, 165 F. App'x at 411.

Although Plaintiff can certainly point to periods of time when he required two crutches, or could not bear weight following surgeries[1], he has not demonstrated that any such inability to ambulate satisfied the twelve-month durational period. *See Forrest*, 591 F. App'x at 366 ("To meet either listing, Forrest must also show that his inability to ambulate lasted or can be expected to last for at least twelve months.") (citing Listing 1.00B2a). As such, for the reasons discussed above, the Court finds the ALJ did not err at Step Three.

Subjective Symptoms

Plaintiff further argues the ALJ "did not properly evaluate the medical evidence and make a determination as to whether Theroux's testimony was credible." (Doc. 13, at 15).

In considering symptoms, an ALJ follows a two-step process, prescribed by regulation. An ALJ must first determine whether there is an underlying medically determinable impairment that could reasonably be expected to produce the claimant's alleged symptoms; second, if such an impairment exists, the ALJ must evaluate the intensity, persistence, and limiting effects of those symptoms on the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1529(a), 416.929(a). In making this determination and considering whether a claimant has disabling pain, an ALJ must consider: (1) daily activities; (2) location, duration, frequency, and intensity of pain

---

1. The Court observes that there are several notations regarding wheelchair usage in the record. *See* Tr. 490, 495, 580, 635, 650, 659, 703. These are all, however, in the "social history" section of Plaintiff's records from Drs. Liu and Parris. *See id.* Plaintiff cites only one of these records in his factual summary (Doc. 13, at 4 (citing Tr. 580)) and presents no specific argument that he used a wheelchair for any extended period. Moreover, in some of these records, Plaintiff was noted to be ambulating with the use of a single crutch, *see* Tr. 634 ("He is still ambulating with one crutch."); Tr. 649 ("He states that he now only occasionally uses a crutch for support."), suggesting the reference to wheelchair usage was historical, rather than current.

14

or symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) treatment, other than medication, to relieve pain; and (6) any other measures used to relieve pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also* SSR 16-3p, 2017 WL5180304. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The ALJ's subjective symptom evaluation determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248.

> Plaintiff specifically argues:
>
> Once again, the ALJ based his decision on the erroneous allegation that Theroux was able to ambulate effectively after he recovered from his various surgeries. (Tr. 20). As stated in the preceding [a]rgument, Theroux never recovered to the point where he could ambulate without the use of one crutch or a cane. Whenever he would improve, he would need another surgery and/or develop an infection. Since Theroux was not able to ambulate effectively, the ALJ erred in basing his credibility analysis on that fact.

*Id.* at 15-16. Because, as discussed above, the Court finds substantial evidence supported the ALJ's determination that Plaintiff was able to ambulate effectively as that term is defined by the Listings, there is similarly no merit to Plaintiff's argument on that basis here. Moreover, the Court notes that at Step Four, where the ALJ evaluated Plaintiff's subjective symptoms, the ALJ significantly limited Plaintiff – to a range of sedentary work with additional postural and environmental restrictions. *See* Tr. 19. The RFC accounted for Plaintiff's need for an assistive device. *See id.* ("He would need to use a cane for ambulation."). Plaintiff only objects to the ALJ's credibility finding on this basis. *See* Doc 13, at 15-16. The Court finds no error.

15

Step Five

Finally, Plaintiff argues the ALJ erred at Step Five. He contends, based on the VE's testimony – if a person were off task or missed a significant amount of work, no jobs would be available – that "the ALJ erred when he found that there were jobs Theroux could perform in the national economy." (Doc. 13, at 17).

To meet the burden at Step Five, the Commissioner must make a finding "'supported by substantial evidence that [Plaintiff] has the vocational qualifications to perform specific jobs.'" *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (quoting *O'Banner v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 321, 323 (6th Cir. 1978)). "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question." *Id.* If an ALJ relies on a VE's testimony in response to a hypothetical to provide substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010). However, an ALJ is only required to include in the RFC those restrictions he finds credible and supported. *Irvin v. Soc. Sec. Admin.*, 573 F. App'x 498, 502 (6th Cir. 2014) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Although framed as a Step Five argument, Plaintiff's challenge is ultimately to the ALJ's failure to include – at Step Four – the cited limitations (being off task, or missing work due to surgeries and recovery). *See* Doc. 17 ("In this matter, the ALJ did not include the fact that Theroux had a history of surgeries which would result in his inability to work on average two months a year."). Thus, the question is whether substantial evidence supports the ALJ's decision not to include such limitations. It does so here.

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In formulating the RFC, an ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. 20 C.F.R. §§ 404.1529, 416.929. An ALJ must also consider and weigh medical opinions. 20 C.F.R. §§ 404.1527, 416.927. "The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. § 416.946(c)). An ALJ's RFC determination must be supported by evidence of record, but it need not correspond to, or even be based on, any specific medical opinion. *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015). It is the ALJ's duty to formulate a claimant's RFC based on all the relevant, credible evidence of record. *Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 587 (6th Cir. 2013).

The ALJ in this case evaluated the evidence – medical and otherwise – in formulating the RFC. (Tr. 19-22). After review, he reasonably determined Plaintiff could perform less than a full range of sedentary work, with postural and environmental restrictions. (Tr. 18). Although Plaintiff's counsel argued at the hearing that Plaintiff could not perform even sedentary work due to his multiple surgeries and recoveries (*see* Tr. 38-39) and asked the VE questions regarding the restrictions Plaintiff now cites (*see* Tr. 57-58), the fact that such questions were asked did not obligate the ALJ to include these restrictions in the RFC. And his decision not to do so was supported by substantial evidence in the decision showing Plaintiff was not as limited as the questions suggested. *See* Tr. 20 (citing Plaintiff's work at the time of the hearing); Tr. 21 (citing Plaintiff's multiple surgeries, but also notations regarding camping, using an elliptical machine, bicycling, and working a "desk job").

17

Further, the ALJ's RFC is supported by the opinion evidence of record, in the form of the State agency physician opinions from April and November 2016. *See* Tr. 79-80, 115-17. Plaintiff argues in Reply that the State agency physicians are "non-orthopedic physicians" who "did not have all the relevant evidence before them", citing Plaintiff's November 2016 knee pain (Tr. 526) and March 2017 surgery (Tr. 605-07). (Doc. 17, at 2-3). First, the regulations recognize one factor to be considered in weighing medical source opinion is "the amount of understanding of our disability programs and their evidentiary requirements that a medical source has" 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6); *see also Gibbens v. Comm'r of Soc. Sec.*, 659 F. App'x 238, 247 (6th Cir. 2016) ("State agency medical consultants are highly qualified medical sources who are also experts in the evaluation of medical issues in disability claims under the Social Security Act[.]") (internal quotation and citation omitted). Second, the ALJ considered the evidence subsequent to the State agency physician opinions (*see* Tr. 21), so he did not commit *per se* error in relying on earlier opinion evidence. *See, e.g.*, *McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (ALJ's reliance upon state agency reviewing physicians' opinions that were outdated was not error where the ALJ considered the evidence post-dating those opinions); *Patterson v. Comm'r of Soc. Sec.*, 2017 WL 914272, at *10 (N.D. Ohio) ("ALJ may rely on a state agency reviewer who did not review the entire record, so . . . long as the ALJ also considers the evidence post-dating the opinion."). And, although Plaintiff points to her March 2017 surgery, the ALJ specifically cited subsequent records that in July 2017, Plaintiff was using a bicycle and was only occasionally using a crutch (Tr. 21 (citing Tr. 649)), and by February 2018, reported working a "desk job" (Tr. 21 (citing Tr. 658)). Moreover, these physicians had records regarding Plaintiff's multiple previous surgeries and recovery periods and opined Plaintiff could perform a reduced range of sedentary work. The ALJ explained that he found these opinions

18

supported by the record, and consistent with subsequent records. (Tr. 22). The ALJ's RFC is a substantially supported view of the record as a whole.

Without a doubt, Plaintiff has a complex medical history, and is certainly significantly limited in what he can do physically. Plaintiff had multiple surgeries, each of which required a recovery period. But the ALJ's determination – that despite this evidence, Plaintiff could perform a reduced range of sedentary work – is supported by substantial evidence in the record, that is "more than a scintilla . . . but less than a preponderance and . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw*, 966 F.2d at 1030. This Court must affirm "so long as substantial evidence . . . supports the conclusion reached by the ALJ" even if substantial evidence also supports Plaintiff's contrary claim. *Jones*, 336 F.3d at 477.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying CIB, DIB, and SSI supported by substantial evidence and affirms that decision.

 s/ James R. Knepp II
United States Magistrate Judge